UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


WILLIAM M. BROWN                                    PLAINTIFF


VS.                          CIVIL ACTION NO. 4:06CV54TSL-LRA


TOWN OF DEKALB, MISSISSIPPI;
DEKALB POLICE DEPARTMENT;
KIRK MERCHANT, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS DeKalb
POLICE CHIEF; JEFF JOWERS,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS DeKalb POLICE OFFICER          DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendants
Town of DeKalb, Mississippi, Kirk Merchant and Jeff Jowers for
summary judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure.  Plaintiff William M. Brown has responded to the motion
and the court, having considered the memoranda of authorities,
together with attachments, submitted by the parties, concludes
that the motion is well taken and should be granted.

Plaintiff William M. Brown filed his complaint in this cause
on April 21, 2006, claiming federal civil rights violations
pursuant to 42 U.S.C. §§ 1983 and 1985, based on alleged
infringement of his Fourth, Fifth and Fourteenth Amendment rights
under the United States Constitution.  Specifically, Brown alleged
conspiracy, unlawful kidnapping and arrest, robbery and
unlawful seizure of items during and resulting from an April 26,
2005 encounter with DeKalb Police Officer Jeff Jowers and then-
DeKalb Police Chief Kirk Merchant.  The events leading to the

filing of Brown's complaint in this cause, as gleaned from the record evidence presented by the parties, are largely undisputed.

Brown was employed as a teller at the Commercial Bank in DeKalb, Mississippi prior to his termination on February 18, 2005 for unsatisfactory job performance.  Following his termination, bank officials discovered that over a period of months during his employment, Brown had embezzled approximately $40,000 from a savings account of the bank's customer Donald Boyd, who was Brown's uncle.  Upon making this discovery, Gloria Cumberland, Vice-President and Operations Manager for the bank, met with then-DeKalb Police Chief Merchant and presented him with documentation which confirmed Brown's embezzlement.  Subsequently, on April 26, 2005, Merchant met with DeKalb police officer Jeff Jowers, showed and explained to him the documents he had been given by Cumberland, and told Jowers to go to Brown's place of employment, the Wal-Mart in Philadelphia, Mississippi, and bring Brown to DeKalb.[1]  Pursuant to Merchant's directive, Jowers drove to the Philadelphia Wal-Mart, where he found Brown at work.  Jowers, who was in plain clothes but had his badge, gun and handcuffs on his side, approached Brown and told him he needed Brown to come with him back to DeKalb.

---

[1]     Although Brown has alleged that Merchant directed Jowers to arrest Brown, Merchant and Jowers both deny this, and maintain that Merchant simply told Jowers to ask Brown to accompany him to DeKalb so that Merchant could speak with him for investigative purposes.  Merchant has testified that he intended to get a warrant and arrest Brown only if Brown refused to come along voluntarily for questioning.  For reasons discussed infra, this dispute is not material to resolution of defendants' motion.

Though Brown has claimed that Jowers never told him why he was there, Jowers maintains that Brown indicated he knew what Jowers was there about, and that Brown was entirely cooperative. In either event, it is undisputed that after the two walked out of the store together, Jowers gave Brown Miranda warnings,[2] and asked to search his car. Brown retrieved his car keys from inside the store, where he had left them, and after he signed a consent to search form, Jowers searched the car, but found nothing of interest. Jowers then drove Brown to DeKalb.

On the way to the police station, they stopped at the Commercial Bank, where they met Chief Merchant. Brown was asked to sign a consent to search form allowing the officers to search his safety deposit box at the bank. Brown did so, following which the officers went through the contents of the box and seized some documents. Brown was then taken to the police station, where the doors were locked and Chief Merchant undertook to interrogate Brown. Brown was again given Miranda warnings, and then, after signing a waiver of rights form, he proceeded to give a detailed confession, which was recorded on video, in which he admitted he had embezzled money not only from his Uncle Donald Boyd's account, but also from the Commercial Bank account of his cousin, Roosevelt Scott. Following his confession, Brown was allowed to leave with his mother and attorney, who had arrived at the police station

---

[2]    Jowers has explained that he gave the Miranda warnings because Brown was beginning to talk somewhat freely and Jowers did not want to risk Brown's making an incriminating statement without have been read his Miranda rights.

during his confession.  A week later, a grand jury indicted Brown for embezzlement.  Ultimately, on May 1, 2006, Brown pled guilty to embezzlement and was convicted of felony embezzlement in the Circuit Court of Kemper County, and was sentenced to a term of incarceration with ten years suspended and five years of probation and ordered to pay restitution of $67,043.33.

Shortly before entering his guilty plea, Brown filed the present action under § 1983, alleging his arrest and the searches of his car and safety deposit box and seizure of items from his safety deposit box violated his rights under the Fourth, Fifth and Fourteenth Amendments.  He also asserted a claim under § 1985.

On the present motion, defendants argue first that Brown's § 1983 claims constitute an impermissible collateral attack on his embezzlement conviction and are therefore barred pursuant to Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).  They argue, alternatively, that even if Brown was "technically arrested" by Jowers on April 26,[3] there was probable cause to arrest him and Brown voluntarily consented to the searches of his vehicle and safety deposit box so that there was no substantive violation of his constitutional rights in any event.  They further submit that Brown's claim under § 1985 fails

---

[3]     Defendants deny that Brown was arrested, and claim that he was merely asked to accompany Jowers to DeKalb, which he did willingly.  However, they state that for purposes of the motion, they "will stipulate that the Plaintiff was technically arrested by Jeff Jowers in Philadelphia on April 26, 2005."

4

because there is no competent proof of any conspiracy involving these defendants and because there is in any event no proof of any racial or otherwise class-based discriminatory animus behind the alleged conspiracy.  Finally, they argue that plaintiff's proof is insufficient to establish a basis for municipal liability.[4]  The court considers these arguments in turn.

In <u>Heck</u>, the Supreme Court held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. at 487-88, 114 S. Ct. at 2373.  Accordingly, when a plaintiff alleges tort claims against his arresting officers, "the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  <u>Id</u>. at 486, 114 S. Ct. 2364.  "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  <u>Id</u>.  <u>See also</u> <u>DeLeon v. City of Corpus Christi</u>, 488

---

[4]      The court notes that defendants also argue that while it did not appear Brown was pursuing any state law claims, any such claims would be barred by the provisions of the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1, <u>et. seq</u>.  Plaintiff has effectively acknowledged by his response to the motion that he is not asserting any claims under state law.

F.3d 649, 652 (5ᵗʰ Cir. 2007) (quoting Heck, 512 U.S. at 486, 114
S. Ct. 2364).

Defendants correctly argue that Brown's claims based on
allegations pertaining to the seizure of his person and the
seizure of his property from the safety deposit box, which led to
his confession, indisputably question the validity of his
subsequent conviction for embezzlement and are consequently barred
by Heck.[5]  In fact, the state court record of the criminal case
against Brown reflects that Brown moved to suppress evidence of
his confession on the basis that it was the "fruit" of his
unlawful arrest.  There was never a ruling on this motion,
however, because Brown pled guilty on the day his motion to
suppress was to come on for hearing.  The claims herein are thus
due to be dismissed under Heck.  See Kundra v. Austin, No.
CA-306CV0728-H, 2006 WL 1391431, 3 (N.D. Tex. 2006) (finding that
claims for false arrest and illegal seizure implicated validity of
convictions and were barred by Heck, reasoning that if the court
were to conclude that the officer lacked probable cause to arrest

---

[5]     Defendants do not argue that a claim based on the
allegedly unlawful search of Brown's vehicle, a search which
yielded no evidence of any sort, would be barred by Heck.
However, as the court concludes infra, the search of the vehicle
was lawful in any event.
     The court would also note that the parties have not indicated
the nature of the documents that were seized from Brown's safety
deposit box, although defendants imply that the documents related
to and substantiated Brown's embezzlement offense.  If the
documents seized had no bearing on Brown's alleged offense, then
Heck would not seem applicable; yet, because the evidence
addressed infra establishes that the search of the safety deposit
box was consensual, there was no Fourth Amendment violation.

the plaintiff and seize the evidence, which was the basis for his convictions, the evidence would be subject to suppression); see also Cook v. McPherson, No. 1:05-cv-136, 2007 WL 1004606, 3 (E.D. Tenn. 2007) (finding Heck applied because causes of action for false arrest and false imprisonment could not be sustained without finding that defendants lacked probable cause and because such a finding would implicitly invalidate the plaintiff's state-court convictions, which could not stand without probable cause). However, summary judgment would be in order in this case even if Heck were not a bar to plaintiff's claims because the claims are without substantive merit.

"A warrantless arrest violates a suspect's Fourth and Fourteenth Amendment rights if the arresting officer lacks probable cause to believe that the suspect has committed a crime." Bodzin v. City of Dallas, 768 F.2d 722, 724 (5th Cir. 1985). Conversely, "[p]robable cause is a defense to a § 1983 claim based on an alleged false arrest," Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990); and this is true whether the arrest is made with or without a warrant, see United States v. Watson, 423 U.S. 411, 422, 96 S. Ct. 820, 827, 46 L. Ed. 2d 598 (1976) (holding that a warrantless arrest requires that the arresting officers possess probable cause to believe that the person has committed or is committing a felony offense).[6]

---

[6]     Mississippi law is consistent. See Qualls v. State, 947 So. 2d 365, 371 (Miss. Ct. App. 2007) ("[A]n arrest without a warrant is valid if the arresting officer has 'probable cause to believe a felony has been committed, and probable cause to believe

Therefore, "[t]o ultimately prevail on his section 1983 false arrest/false imprisonment claim, [Brown] must show that [defendants] did not have probable cause to arrest him." <u>Haggerty v. Texas Southern Univ.</u>, 391 F.3d 653, 655 (5th Cir. 2004) (citing <u>Brown v. Lyford</u>, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest ... and false imprisonment . . . require a showing of no probable cause.")); <u>Maier v. Green</u>, 485 F. Supp. 2d 711, 716 (W.D. La. 2007) ("[I]f there was probable cause for the arrest, a claim for false arrest is not viable.") (citations omitted).

"Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" <u>Haggerty</u>, 391 F.3d at 655 (quoting <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 313 (5th Cir. 2001). <u>See also</u> <u>Qualls v. State</u>, 947 So. 2d 365, 371 (Miss. Ct. App. 2007) (under Mississippi law, "[t]o determine if an officer had probable cause to arrest an individual, the court must look at the facts and the totality of the circumstances within the knowledge of the officer, not only at that time, but in the preceding circumstances before the arrest, and ask if 'that information was reasonably trustworthy and sufficient to warrant a reasonably prudent person to believe that a crime had been

_____

the suspect to be arrested committed the felony.'") (quoting <u>Abram v. State</u>, 606 So. 2d 1015, 1025-26 (Miss. 1992)).

committed.'") (quoting <u>Hodge v. State</u>, 801 So. 2d 762, 770 (Miss. Ct. App. 2001)) .

Here, plaintiff does not deny that at the time of his arrest, Merchant and Jowers possessed information that would have warranted a reasonable person in believing that he had committed the crime of embezzlement.  Rather, he argues that the arrest was illegal because at the time of his arrest at the Philadelphia Wal-Mart, Officer Jowers was outside of his jurisdiction and thus lacked authority to make the arrest, and because neither Jowers nor Merchant had any "personal knowledge" that plaintiff had committed an offense and therefore could not lawfully have arrested him without first obtaining a warrant.[7]

As defendants point out, under Mississippi law, plaintiff's arrest was not unlawful solely because Jowers was outside his jurisdiction (the Town of DeKalb) at the time he made the arrest. The Mississippi Supreme Court has held that while an officer may lack the authority of a police officer to make an arrest when he is outside the city limits (unless he is in "hot" pursuit or is executing a warrant authorizing such arrest), "'[a]n arrest by a city policeman outside his territorial jurisdiction is

---

[7]     Plaintiff complains, "Based upon . . . third hand information Jowers left his jurisdiction and arrested the Plaintiff without personal knowledge of the commission of felony and without a warrant issued by an independent magistrate."  He continues, stating, "Since the information that the arresting individual acted upon was not observed personally, any law enforcement officer would know that an independent magistrate should have been sought to make a probable cause determination and issue a warrant for the arrest of the Plaintiff if warranted."

unquestionably valid if made upon grounds which would authorize a lawful arrest by a private citizen.'"  See Nash v. State, 207 So. 2d 104, 106 (Miss. 1968) (quoting People v. Alvarado, 208 Cal. App. 2d 629, 25 Cal. Rptr. 437 (1962)).  The Mississippi statute governing warrantless arrests provides that "[a]n officer or private person may arrest any person without warrant . . . when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it. . . ."  Miss. Code Ann. § 99-3-7(1) (emphasis added).[8]

The court in Nash quoted with approval the following from People v. McCarty, 164 Cal. App. 2d 322, 330 P.2d 484 (1958):

> We find no merit in defendant's contention that his arrest in Los Angeles by a police officer from Ventura County was unlawful because the officer was without a warrant.  Without citation to any supporting authority, defendant urges '* * * that the spirit of the law requires that where an officer is advised of the whereabouts of a suspect in another county, he is under a duty, at least absent emergency circumstances, to procure a warrant before making an arrest outside the territorial limits of his office.'  Defendant properly concedes that the fact that an officer could have

---

[8]     The statute provides for fully:
An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested.  And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.
Miss. Code Ann. § 99-3-7(1).

obtained a warrant does not of itself render illegal an arrest or an incidental search and seizure without a warrant.  The authority of the arresting officer in the instant case cannot be denied.  It is undisputed that he was a peace officer . . . and as such he had authority . . . to make the arrest without a warrant if a felony had in fact been committed and he had reasonable cause to believe that defendant had committed it.  These conditions were fulfilled; the actual commission of a felony is unquestioned and the victim had made a positive identification of the defendant as the perpetrator in the presence of the officer only a few hours before the arrest was made.  Under these circumstances a private person could have made this arrest without a warrant.  It would appear anomalous to hold unlawful an arrest by a peace officer when the same arrest by a private citizen clearly would have been lawful.

207 So. 2d at 106 (citations omitted).  This passage confirms that under Mississippi law, Jowers could have made a lawful warrantless arrest notwithstanding that he was beyond the territorial jurisdiction of the Town of DeKalb, so long as he had probable cause to believe Brown had committed a felony. Accordingly, there is no merit to plaintiff's argument that Jowers, being outside the territorial limits of the Town of DeKalb, could not lawfully have arrested him without a warrant.

Under clear Fifth Circuit authority, however, regardless of whether the officer had authority under state law to make the arrest, the arrest is valid under constitutional principles so long as the officer had probable cause to arrest.  See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1189 (5th Cir. 1991) ("[W]e hold 'there is no cause of action for "false arrest" under section 1983 unless the arresting officer lacked probable

11

cause.").[9]  The question, then, is whether at the time of the
arrest, Jowers had reasonable ground to believe that Brown had
committed a felony.  In the court's opinion, the answer is
unequivocally yes.

In this vein, the court would again observe that in this
case, Brown does not necessarily deny that the information
provided by Cumberland to Merchant, and in turn provided by
Merchant to Jowers, could have created probable cause for an
arrest.  He argues, however, that because Jowers had no "personal
knowledge" that Brown had committed a felony but got his
information "third hand" from Merchant, and Merchant likewise had

---

[9]     Some circuits have suggested that an arresting officer's
lack of authority under state or federal law to conduct an
otherwise constitutionally valid arrest (i.e., one for which there
is probable cause) renders the arrest an unreasonable seizure
under the Fourth Amendment.  See Malone v. County of Suffolk, 968
F.2d 1480, 1482-83 (2d Cir. 1992) (whether officers have valid
authority to arrest pursuant to state law affects
constitutionality of the arrest); Ross v. Neff, 905 F.2d 1349,
1353-54 (10th Cir. 1990) (arrest executed outside of officer's
jurisdiction violates the Fourth Amendment and gives rise to
potential § 1983 action); United States v. Trigg, 878 F.2d 1037,
1041 (7th Cir. 1989) (reasonableness of arrest for Fourth
Amendment purposes depends on whether the arresting officer had
probable cause and whether he was authorized by state and or
municipal law to effect a custodial arrest for the particular
offense).
     Other circuits, however, have ruled consistent with the Fifth
Circuit that state law is not relevant to the issue.  See United
States v. Bell, 54 F.3d 502, 504 (8th Cir. 1995) ("[W]e do not
think Fourth Amendment analysis requires reference to an arrest's
legality under state law."); Street v. Surdyka, 492 F.2d 368,
372-73 (4th Cir. 1974) (holding that no cause of action for false
arrest lies under § 1983 unless officer lacked probable cause,
reasoning that while states are free to impose greater
restrictions on arrests than required by the federal constitution
(which requires only probable cause), "their citizens do not
thereby acquire a greater federal right").

no such "personal knowledge," having gotten his information

"second hand" from Cumberland, then neither had the requisite

probable cause to arrest Brown.  Brown's position is without

merit, for "first hand" knowledge is not a prerequisite to

probable cause; rather, probable cause will be found as long as

the officer had reliable information that the person he proposed

to arrest had committed a felony.  Indeed, law enforcement

officers routinely rely on information provided by others,

including even anonymous tips, and are entitled to do so in

formulating probable cause if circumstances indicate that the

information is reliable.  See U.S. v. Bustamante-Saenz, 894 F.2d

114, 118 (5th Cir. 1990) ("Probable cause to arrest exists when the

facts and circumstances within the knowledge of the arresting

officer are sufficient to cause a person of reasonable caution to

believe an offense has been or is being committed.") (quoting

United States v. Antone, 753 F.2d 1301, 1304 (5th Cir. 1985)).

      This point was well made by the Mississippi Supreme Court in

Jones, supra.  There, the defendant was arrested in Memphis by

Memphis police officers for a murder that had occurred in

Washington County, Mississippi.  The officers had no warrant for

Jones' arrest and acted on information that had been furnished by

the Washington County Sheriff's Office (WSCO).  Jones challenged

his arrest as illegal on the basis that the officers had no

warrant for his arrest, and they lacked personal knowledge that he

had committed an offense.  The court found that the officers did

not require a warrant for Jones' arrest, so long as they had

probable cause to believe that Jones had committed a felony.  And, notwithstanding Jones' objection that the arresting officers had no personal knowledge of his participation in the crime, the court determined that the officers had probable cause for the arrest, explaining that in making the arrest, the officers were entitled to rely on information relayed to them by the WCSO, whose reasonable belief of Jones' involvement in the murder could be transferred to them.  The court reasoned that under settled Mississippi law, "an informant may provide officers with sufficient probable cause to make a warrantless arrest," and if information received from an informant could be sufficiently reliable to provide probable cause, there was no reason information received from another law enforcement officer should not also suffice.  Id.  See Abram v. State, 606 So. 2d 1015 (Miss. 1992) (finding that sheriff had probable cause for warrantless arrest where he knew one informant to be very reliable based on past experience and where information provided by informants suggested a basis of knowledge and further reliability), overruled on other grounds, Foster v. State, --- So.2d ----, 2007 WL 1558750 (Miss. May 31, 2007); Moore v. State, 493 So. 2d 1295 (Miss. 1986) (finding sufficient indicia of reliability in informant's identification of defendant as assailant in fact that informant also identified his brother as an assailant).

Here, defendants have presented uncontradicted evidence that several days prior to Brown's arrest, Gloria Cumberland provided Merchant with extensive documentation which, as explained by

14

Cumberland to Merchant, showed that Brown had embezzled nearly $40,000 from his uncle's savings account.  Brown and Cumberland maintain, and plaintiff does not deny, that these documents showed beyond any doubt that Brown had embezzled these funds, so that based on this information, Merchant had reasonable grounds for concluding Brown had committed a felony.  It is also undisputed that prior to plaintiff's arrest by Jowers, Merchant had provided these same documents to Jowers and had gone through them with Jowers, explaining to him, as Cumberland had explained to Merchant, how the documents showed there was no question that Brown had embezzled almost $40,000 from his Uncle Donald Boyd's account.  Both Jowers and Merchant thus had probable cause to believe that a felony had been committed and that Brown was the

guilty party.[10]  Accordingly, Brown's claim for false arrest, even

were it not barred by Heck, would fail on the merits.

In addition to his false arrest claim, plaintiff has also

charged that Jowers' search of his car without a warrant violated

his Fourth Amendment right to be free from unreasonable searches.[11]

Relative to this claim, Brown acknowledges that he signed a form

consenting to the search of his vehicle, and he implicitly

acknowledges that consent to search is an exception to the warrant

requirement.  See U.S. v. Three Hundred Sixty-Nine Thousand Nine

---

[10]   Shortly following his arrest, Brown filed a criminal
complaint against Jowers for kidnapping.  Pursuant to Mississippi
Code Annotated § 99-3-28, the Neshoba County Circuit Court was
required to conduct a probable cause hearing "before an arrest
warrant shall be issued against . . . a sworn law enforcement
officer . . . for a criminal act, whether a misdemeanor or
felony."  In response to Brown's affidavit against Jowers, a
probable cause hearing was held in the state circuit court.  At
the conclusion of that hearing, the judge found that there was no
probable cause to issue a warrant against Jowers for kidnapping,
but that probable cause did exist to arrest Jowers for "unlawful
arrest."  The judge found that Jowers' actions of arresting Brown
without a warrant outside the territorial limits of Jowers'
jurisdiction and without assistance from local law enforcement
officials was "shocking," stating it was plain to him that Jowers
was "completely without jurisdiction, completely without
authority," and that his arrest of Brown "totally violated all the
principles of law."  His conclusion as to probable cause (as to a
nonexistent offense) is not a final judgment for purposes of
collateral estoppel and is not binding on this court.  See Royal
Oil Co., Inc. v. Wells, 500 So. 2d 439, 445 (Miss. 1987).  Neither
is his opinion persuasive.  The circuit judge never considered
whether Jowers possessed information that gave him probable cause
to arrest Brown; rather, the sole basis for his ruling was his
mistaken belief that Jowers had no authority to arrest anyone
outside his own jurisdiction.  There is no indication that the
judge considered the import of Nash.

[11]   The fact that nothing was seized from the car would not
necessarily foreclose a viable claim for violation of the Fourth
Amendment if the search was unlawful.

Hundred Eighty Dollars ($369,980) in U.S. Currency, 214 Fed. Appx.
432, 434, 2007 WL 143240, 2 (5th Cir. 2007) (observing that
"consent is a well-recognized exception to the usual requirement
of a warrant or probable cause") (citing United States v. Watson,
423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976)).  In his
response brief, however, Brown, through counsel, states that
"Jowers told Plaintiff if he did not sign a consent form allowing
him to search his car, he would have his car towed.  Jowers
pointed out a wrecker that was present.  Plaintiff unwillingly
signed the consent form in order to keep his car from being
towed."  Moreover, in his more recently filed "revised
memorandum,"[12] he declares, "Defendant Jowers threatened to tow
Plaintiff's car if Plaintiff did not allow him to search his car.
Defendant Jowers searched Plaintiff's car without a search warrant
after threatening Plaintiff."  However, not only has plaintiff
cited no record evidence to support this assertion, his claim in
this regard is directly belied by earlier sworn testimony given by
Brown regarding this matter at a probable cause hearing before the
Neshoba County Circuit Court.[13]  In that hearing, Brown plainly
testified that Jowers made no reference to the wrecker at the time
he was requesting to search Brown's car, and that he, Brown, did
not know that the wrecker which was in the Wal-Mart parking lot
was there particularly to tow his car until after he had already

---

[12]   The court perceives no apparent purpose for this
recently filed document.

[13]   See supra note 10.

consented to allow Jowers to search the car.  Brown stated that

once Jowers found out that he, Brown, "was going to let him search

the car," Jowers told the wrecker driver that his services would

not be needed.  Later in that hearing, Brown testified more

directly on this subject:

> Q.  You also testified you gave a consent to search your
> vehicle there on the premises of Wal-Mart?
>
> A.  Yes, sir.
>
> Q.  And you don't make any dispute that you voluntarily
> signed a consent to search?
>
> A.  No, sir, I don't.
> ...
> Q.  Now I understood you to make some remarks about a
> tow truck, but I also understood you to say you didn't
> even know the tow truck was there until after you had
> given your voluntary consent to search your car?
>
> A.  After I gave consent to search the car, we got in
> the police car and he drove to where the tow truck was
> located.  After we got to where the tow truck was located,
> he told the tow truck driver that he didn't need him
> because I was going to give him consent to search the
> car.
>
> Q.  Is that an awfully long answer to, yes, you didn't
> know until after you had given the voluntary consent?
>
> A.  Yes, sir.

Given Brown's sworn testimony, the court cannot fathom the basis

for his attorney's now claiming that Brown's consent to search the

car was not voluntary but rather coerced by Jowers' threatening to

have his vehicle towed.  This claim will be dismissed.

Brown also disputes the voluntariness of his consent to

defendants' search of his safety deposit box, arguing that

Merchant and Jowers "forced Plaintiff to get his bank safe deposit

18

box and deliver it to Defendants," and insisting that he only complied because he felt that he had to because a police officer had told him he wanted to see what was in the safety deposit box. The evidence does not support a finding that Brown was "forced" to allow defendants access to his safety deposit box. That is, there is no proof that defendants did anything other than state to him that they wanted to search the safety deposit box. There is no proof that defendants threatened or coerced or forced Brown in any way. On the contrary, Gloria Cumberland, who was present throughout the time Brown and defendants were at the bank, has stated in an affidavit that Brown was fully cooperative, that he was not rushed, and that he voluntarily executed a consent to search form, commenting that he had nothing to hide there. There is nothing that would support a finding that Brown's consent was other than voluntary,[14] and accordingly, this claim, too, will be dismissed.[15]

---

[14] Factors to consider in whether consent was freely and voluntarily given are: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." United States v. Ponce, 8 F.3d 989, 997 (5th Cir. 1993) (quoting United States v. Gonzalez–Basulto, 898 F.2d 1011, 1013 (5th Cir. 1990)).

[15] Defendants seek dismissal of Brown's claims against the Town of DeKalb, arguing that in the absence of proof of an official policy, there can be no § 1983 liability. While that is certainly true, so, too, is it the case that there can be no municipal liability in the absence of a constitutional deprivation. The claims against the Town will be dismissed.

Brown's complaint charges that defendants Merchant and Jowers violated § 1985, which prohibits conspiracies to deprive persons of equal protection of the laws.  To maintain an action for violation of § 1985, the plaintiff must establish that "some racial or perhaps otherwise class-based invidiously discriminatory motive [was] behind the conspirators' actions."  Salts v. Moore, 107 F. Supp. 2d 732, 739 (N.D. Miss. 2000).  Defendants maintain that plaintiff has wholly failed to come forward with evidence to establish the existence of a conspiracy to discriminate against him for any reason or to deprive him of any federally protected right.  In response to the motion, plaintiff has offered an affidavit from Thomas Taylor, Jowers' ex-wife's current husband, who claims that Merchant and Jowers have constantly harassed him since he came to DeKalb in October 2005; that Merchant and Jowers have continuously threatened to kill and do bodily harm to him, his wife and family; that Merchant has stopped him four times for no reason and has threatened to kill him thirty times; that Jowers has threatened to kill him forty times; and that Merchant has threatened to kill Taylor's attorney, Linda Hampton, to whom he consistently refers as "the nigger bitch attorney," four times (Hampton is also Brown's attorney).  Even assuming all that Taylor claims is true, however (including his assertion that Merchant has referred to Linda Hampton as a "nigger"), that does not tend to establish that Merchant and Jowers conspired to deprive Brown of his rights based on his race.  Accordingly, as plaintiff's

evidence is insufficient to support his charge of a race-based conspiracy, this claim will be dismissed.

Based on the foregoing, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 11th day of September, 2007.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE